IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEMONSIA LAPEZ RICKS, #172 290, )
                                )
            Petitioner,         )
                                )
v.                              ) CIVIL ACTION NO.: 11-CV-128-TMH
                                )              [WO]
CHERYL PRICE, WARDEN, *et al.*, )
                                )
            Respondents.        )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

On February 22, 2011,[1] Petitioner Demonsia Ricks filed this 28 U.S.C. § 2254 petition

for habeas corpus relief which challenges his  convictions for attempted murder and  first

degree robbery entered against him by the Circuit Court for Montgomery County, Alabama,

on March 20, 2006.   The trial court denied Petitioner's March 27, 2006 request for a new

trial on April 3, 2006.  On April 14, 2006 the trial court sentenced Petitioner, as a habitual

offender and pursuant to the firearm enhancement statute, to concurrent twenty-five years

terms of imprisonment in each case.  (*Doc. Nos. 1, 11*.)

Petitioner appealed his convictions and sentence to the Alabama Court of Criminal

---

[1]Although the present petition was stamped "filed" in this court on February 23, 2011,  a notary
notarized  the *in forma pauperis* affidavit submitted with the petition on February 22, 2011.  Thus, it is
clear that Petitioner had these documents within his possession at such time and, therefore, could not
have  submitted them to prison officials for mailing prior to February 22, 2011.  A *pro se* inmate's
petition is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S.
266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v.
Vaughn*, 993 F.2d 776, 780 (11th  Cir. 1993).  In light of the foregoing, the court considers February 22,
2011 as the date of filing.

Appeals which described the salient facts.

> On December 26,2004, Brent Holtand his friend Elbert Whiting were riding around Montgomery in Holt's car.  They were with two friends who were in another car. Holt followed the other car into the parking lot of a service station and parked between two gasoline pumps. Holt testified that "[w]e was just sitting there, and a car come flying in front of me, and it stopped. And a guy jumps out and comes up to my door, saying, 'These here [wheel] rims mine. '" (R. 32.)

> Holt identified the "guy· as the defendant, Ricks.  Holt said he offered to show Ricks the receipt for the rims, which he had purchased only a few weeks earlier. At that time, Holt said, Ricks reached "like he was going to open, unlock my door, like he was going to get in with me." (R. 32.) Holt's friend, Whiting, who was in the car with Holt, said that Ricks told them to get out of the car, saying that the rims were his. Holt testified that Ricks then pulled out a gun and shot into the car several times. Holt suffered a bullet wound to the stomach.

(Doc. #11-1)

Ricks raised the   following issues on appeal to the Alabama Court of Criminal Appeals:

1.  The evidence was insufficient to sustain his conviction for first degree robbery;

2.  The trial court erred by admitting into evidence statements Petitioner gave to law enforcement officials.

3.  The trial court erred when it failed to give two of his requested jury instructions on self-defense.

4.  The trial court erred when it failed to properly consider and grant his motion for new trial without a hearing on the merits of the motion.

The Alabama Court of Criminal Appeals determined that Petitioner's claims entitled

him to no relief and affirmed his convictions and sentence on April 20, 2007. The Supreme Court of Alabama denied Petitioner's petition for writ of certiorari on September 14, 2007 and the Court of Criminal Appeals issued a certificate of judgment on September 17, 2007. (*Doc. No. 11, Exhs. A, A-1, B-1.*)

Petitioner filed a Rule 32 petition with the trial court on May 30, 2008.   The trial court denied the petition on November 14, 2008.  Petitioner appealed the lower court's judgment and presented the following claims to the Court of Appeals: 1) trial counsel failed to object to the failure of Petitioner to be formally arraigned; 2) trial counsel failed to interview and subpoena certain witnesses for trial; and 3) the trial court should not have summarily dismissed his appeal. The appellate court affirmed the trial court's ruling on November 6, 2009 and the Supreme Court of Alabama issued a certificate of judgment on February 12, 2010.  (*Doc. No. 11, Exhs. B, B-1, B-2.*)

Petitioner filed a second Rule 32 petition on March 1, 2010. On June 22, 2010 the trial court dismissed the post-conviction petition as successive and further ruled that Petitioner failed to meet his burden of proof in proving that his convictions and sentence were invalid. The Alabama Court of Criminal Appeals affirmed the trial court's ruling on December 10, 2010 and issued a certificate of judgment on January 26, 2011. (*Doc. No. 11, Exhs. C, C-1 C-2.*)

In the instant application for habeas corpus relief,  Petitioner presents the following claims:

1. Trial counsel provided ineffective assistance because he:

    a.  Failed to ensure that Petitioner was arraigned prior to trial;

    b. Failed to investigate, interview, and subpoena prospective witnesses to support Petitioner's defense;

    c. Failed to allow Petitioner to testify on his own behalf; and

    d. Failed to request a jury instruction on self-defense where Petitioner's witnesses could have established that the tire rims were his.

2.  The trial court lacked subject-matter jurisdiction because Petitioner could not be convicted of both attempted murder and first degree robbery without violation the principles of double jeopardy; and

3.  The trial court lacked jurisdiction to appoint counsel for Petitioner prior to determining whether he was indigent.

(*Doc. No. 1*.)

Respondents filed an answer and supplemental answers to Petitioner's habeas application in accordance with the provisions of Rule 5, *Rules Governing Section 2254 Cases in the United States District Courts*.  (*Doc. Nos. 11, 13, 18*.) They contend that the present habeas corpus petition is due to be denied.  With regard to Petitioner's allegations that: 1) trial counsel was ineffective for not allowing Petitioner to testify and for failing to request a jury instruction on self-defense; and 2)  the trial court lacked subject matter jurisdiction where Petitioner could not be indicted for both attempted murder and robbery in the first

degree and where it appointed counsel prior to a determination of Petitioner's indigency status, Respondents maintain that these claims are procedurally barred from review by this court. In support of this argument, Respondents contend that Petitioner's claim that trial counsel failed to request a self-defense jury instruction is raised for the first time in this habeas petition and that the remaining defaulted claims were not presented to the state courts in accordance with the requirements of the state's procedural rules.[2] *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Teague v. Lane*, 489 U.S. 288 (1989); *Wainwright v. Sykes*, 433 U.S. 72 (1977).; *Smith v. Jones*, 256 F.3d 1135, 1140-1146 (11th Cir. 2001); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir.); *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *Collier v. Jones*, 901 F.2d 770, 773 (11th Cir. 1990). Respondents further argue that Petitioner's claims that trial counsel was ineffective for failing to ensure that Petitioner was arraigned and for failing to investigate, interview, and subpoena prospective witnesses to support Petitioner's defense were properly adjudicated on the merits by the state courts. *Williams v. Taylor*, 529 U.S. 362, 404-405 (2000). (*Doc. Nos. 11, 13.*)

       Petitioner took advantage of the opportunity granted him to respond to Respondents'

---

[2]It appears, however, from a review of Petitioner's Rule 32 petition and his appeal from its denial that he alleged trial counsel was ineffective for failing to request a jury instruction on self-defense amid his allegation that trial counsel performed deficiently when he failed to call certain witnesses at trial. (*See Doc. No. 11, Exh. B at pg. 22; Doc. No. 18, Exh. B-3 at pg. 18.*) It also appears from a review of these state court proceedings that Petitioner complained that trial counsel was ineffective for refusing him an opportunity to testify on his own behalf. (*See Doc. No. 11, Exh. B-1 at pgs. 21-22; Doc. No. 18, Exh. B-3 at pgs. 17-18.*) Thus, the court will address these claims.

answer, as supplemented.  (*Doc. Nos. 15, 20*.)   After reviewing the § 2254 petition, Respondents' answers, and Petitioner's responses,  the court concludes that no evidentiary hearing is required, and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.


## II.  DISCUSSION

*A.  Procedural Default*

Respondents correctly assert that Petitioner has procedurally defaulted on his claims that: 1) the trial court lacked subject matter jurisdiction over the offenses lodged against Petitioner because he could not be indicted for both attempted murder and robbery in the first degree without violating the Double Jeopardy Clause; and 2) the trial court appointed counsel prior to a determination of Petitioner's indigency status.  (*Doc. Nos. 11, 13*.)

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971).  Thus, claims which have never been presented to a state court or claims which were not exhausted properly in the state courts are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *Gray v. Netherland,* 518 U.S. 152, 161-162 (1996) (where state-court remedies are no longer available because petitioner failed to file a direct appeal or initiate timely state post-conviction action, petitioner has procedurally defaulted on his claims and is generally barred

from asserting claims in a federal habeas proceeding); *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1 (1991) (citations omitted) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] ... there is a procedural default for purposes of federal habeas."); *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (when petitioner fails to properly exhaust claims in state court and is barred from raising claims in state court by applicable procedural rules, such claims are procedurally defaulted).

Here, Petitioner's assertions regarding  the trial court's lack of jurisdiction were presented in a second Rule 32 petition. These claims are defaulted, however, due to Petitioner's failure to present these claims to the highest state court with jurisdiction to review the claims. *See Boerckel*, 526 U.S. 838. (*See Doc. No. 11, Exh. C-1; Doc. No. 18 at pgs. 5-6.*)

This court may reach the merits of Petitioner's procedurally defaulted claims "only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default. *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *[Wainwright v.] Sykes*, 433 U.S. [72,] 87 [(1977)].  . . . Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477

U.S. at 495-96, 106 S.Ct. at 2678.  A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent.  *Id.*"  *Henderson*, 353 F.3d at 892.

> I.  *Cause and Prejudice*
>
> "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir.1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  *Id.*; *Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir.2002).

*Henderson*, 353 F.3d at 892.

The court afforded Petitioner an opportunity to demonstrate the existence of cause for his failure to raise his defaulted  claims in the state courts properly and prejudice resulting from this failure.  (*Doc. Nos. 14, 19.*)  To demonstrate cause sufficient to excuse a procedural default, Petitioner must establish that an objective impediment, not of his own making, denied him the opportunity of presenting his claims properly to the state courts.  *See McCoy v. Newsome*, 953 F.2d 1252, 1260 (11th Cir. 1992).  Based on the pleadings, documents, and records filed in this  case, the court finds that Petitioner has not established the existence of any "objective factor external to the defense that prevented [him] from raising the claim[s] and which cannot be fairly attributable to his own conduct." *Murray*, 477 U.S. at 488. (*See Doc. Nos. 15, 20.*)   Petitioner has, therefore, failed to demonstrate  cause for his failure to present his claims to the state courts in compliance with applicable procedural rules. Furthermore, Petitioner has not shown the existence of actual prejudice emanating from

-8-

infringement of federal law.  Nevertheless, this court may still reach the merits of Petitioner's procedurally defaulted claims in order to prevent a fundamental miscarriage of justice.

### ii.  Fundamental Miscarriage of Justice

The miscarriage of justice standard is directly linked to innocence.  *Schlup v. Delo*, 513 U.S. 298, 321 (1995).  Although an actual innocence claim "can itself be defaulted is not to say that the procedural default may not ***itself*** be excused if the petitioner can satisfy the cause-and-prejudice standard [or fundamental miscarriage of justice exception] with respect to that claim." *Edwards,* 529 U.S. at 453 (emphasis in original).    Innocence is not an independent claim; instead, it is the "gateway" through which a petitioner  must pass before a court may consider constitutional claims which are defaulted.  *Schlup*, 513 U.S. at 315.  This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray*, 477 U.S. at 496; *Schlup v. Delo*, *supra*.   "[T]he *Schlup* standard is demanding and permits review only in the  'extraordinary' case." *House v. Bell,* 547 U.S. 518, 538 (2006) (citations omitted).  Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims." *Id*. at 537.

"To establish actual innocence, [a habeas petitioner] must demonstrate that . . . 'it is more likely than not that no reasonable juror would have convicted him.'  *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." *Bousley  v. United States,* 523 U.S. 614, 623 (1998); *House,* 547 U.S. at 538. In this context, Petitioner

must show constitutional error coupled with newly discovered evidence that was not presented at trial that would establish factual innocence rather than mere legal insufficiency. *Bousley*, 523 U.S. at 623-24*; Johnson v. Alabama,* 256 F.3d 1156, 1171 (11th Cir. 2001). *See also Schlup,* 513 U.S. at 324.

> *Schlup* observes that
>
>> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*. at 324.

Petitioner does not assert that he has "new" reliable evidence of factual innocence, and there is nothing in the record that suggests a miscarriage of justice will occur if the court does not reach the merits of his defaulted claims.  Petitioner simply presents no evidence nor suggests that any exists which could satisfy the difficult standard set forth in *Schlup*. Petitioner's procedurally defaulted claims are, therefore, foreclosed from federal habeas review.

## B.  Standard of Review For Remaining Claims

To prevail on his § 2254  claims adjudicated on the merits by the state courts, Petitioner  must show that a decision by the Alabama state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination

of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2);[3] *see Williams v. Taylor*, 529 U.S. at 412-13.  A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Id*. at 405-06.  A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Id*. at 407.  "Federal habeas relief is available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'" *Parker v. Head*, 244 F.3d 831 (11th Cir. 2001) (*citing Williams*, 529 U.S. at 409).  It is the objective reasonableness, not the correctness *per se*, of the state court decision that this court must decide.  *See Williams*, 529 U.S. at 411; *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a

---

[3]28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1)      resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(2)      resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)."  *Price v. Vincent*, 538 U.S. 634, 639 (2003).  The Supreme Court admonishes that such evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d). . . " *Id.* at 636.   Additionally, a state court's summary rejection of a federal constitutional issue qualifies as an adjudication on the merits under § 2254(d) so that the summary rejection is entitled to the same deference as a written opinion.  *See Wright v. Sec. of Dept. Of Corr.,* 278 F.3d 1245, 1254 (11th Cir. 2002).

C.  *Remaining Claims*

     *I.  Ineffective Assistance of Counsel Claims Generally*

The Alabama Court of Criminal Appeals applied *Strickland v. Washington*, 466 U.S. 668 (1984), in affirming the lower court's decision to deny relief on Petitioner's claims of ineffective assistance of counsel. (*Doc. No. 11, B-1*.)  *Strickland* sets forth the clearly

-12-

established federal law on this issue.  Thus, this court will determine whether the state courts' rejection of Petitioner's claims of ineffective assistance of counsel "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  Petitioner must satisfy the requirements of a two-pronged test to prevail on his claims of ineffective assistance of counsel.  First, Petitioner must establish that his attorney's performance "fell below an objective standard of reasonableness."  *Strickland* 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Id*.  Once this threshold test is met, the petitioner must then show that the deficient performance of his counsel prejudiced his defense.  *Id.* at 687.  To establish prejudice, Petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Unreliability or unfairness does not result if counsel's ineffectiveness does not deprive the defendant of any substantive or procedural right to which the law entitles him.  *Williams*, 529 U.S. at 393 n. 17.  There is a strong presumption that counsel's performance was reasonable and adequate and great deference is shown to choices dictated by reasonable trial strategy.  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Any review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation."  *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (*en banc*).

-13-

The state courts did not decide Petitioner's claim of ineffective assistance of counsel "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law. *Williams*, 362 U.S. at 412. Consequently, the state appellate court's rejection of the ineffective assistance of counsel claims was not contrary to actual Supreme Court decisions. This court must therefore determine whether the Alabama Court of Criminal Appeals' decision to reject the ineffective assistance of counsel claims was an unreasonable application of the *Strickland* standard.

> In determining whether the state court's decision is an unreasonable application of the law set out in [applicable] Supreme Court decisions, we need not decide whether we would have reached the same result as the state court if we had been deciding the issue in the first instance. Instead, we decide only whether the state court's decision of the issue is objectively unreasonably. *See Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000) ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *Brown v. Head*, 272 F.3d 1308, [1313] (11th Cir. 2001)("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

*Wright v. Secretary for the Dept. of Corrections*, 278 F.3d 1245, 1256 (11th Cir. 2002).


a.   *Failure to Ensure Petitioner's Arraignment Prior to Trial*

Petitioner argues that  trial counsel performed deficiently when he failed to ensure Petitioner's arraignment prior to trial. Addressing this contention, the Alabama Court of Criminal Appeals noted the State's argument:

. . .[T]hat it was not unreasonable for trial counsel to refrain from objecting to the lack of formal arraignment because the requirements of a formal arraignment, as set out in Rule 14.2(a), Ala.R.Crim.P., were satisfied in his initial appearance.

Rule 14.2, Ala.R.Crim.P. states:

"(a) Mandatory Procedure. At arraignment the court shall:

" ( 1) Determine whether the defendant is represented by counsel, and, if not appoint counsel to represent the defendant if appropriate under Rule 6.1;

"(2) Determine that the defendant or defendant's attorney has received a copy of the charges against the defendant;

"(3) Determine the age of the defendant and whether the defendant is entitled to the benefits of the Youthful Offender Act, and if so, proceed as provided therein, or, if not, ascertain and accept the defendant's plea unless the arraignment is continued to a later date; and

"(4) Advise the parties in attendance of any dates set for further proceedings."

The State submitted that, while it is unclear whether a youthful offender decision was made at the initial appearance, Ricks would not have been eligible for this status as he was 28 years old at the time of the offenses. Further, the State asserts, the other requirements of the rule were met in the initial or "72 hour" appearance by Ricks. The State pointed out, and the case action summary verifies, Ricks appeared in court for a "72 hour hearing," as governed by Rule 4. 4, Ala.R.Crim.P., which provides:

"(a) In General. At defendant's initial appearance the judge or magistrate shall:

"(1) Ascertain the defendant's true name and address and, if necessary, amend the formal charges to reflect defendant's true name, instructing the defendant to notify the court promptly of any change of address;

-15-

"(2) Inform the defendant of the charges against him;

"(3) Inform the defendant of the right to be represented by counsel, advise the defendant that he will be afforded time and opportunity to retain counsel, advise the defendant that if he is indigent and unable to obtain counsel, counsel will appointed to represent him, and, inform the defendant of the right to remain silent; and

" ( 4) Determine conditions of release in accordance with Rule 7.3."

(*Doc. No. 11, Exh. B-1 at pgs. 2-4.*)

Under Alabama law, the purpose of an arraignment is to inform the accused of the charges against him and to allow him to offer an answer to those charges. *See* Ala. Code § 15–15–1 (1975).  It is clear that Petitioner was notified of the pending charges. (*See Doc. No. 11, Exh. B at pgs. 24-25, 47-48.*)  Also, " '[w]aiver of arraignment provides a basis for a claim of ineffective assistance of counsel only if the defendant can show he was unaware of the charges against him. *McArthur v. State,* 169 Ga.App. 263, 312 S.E.2d 358 (1983). In the absence of any claim or evidence that [Petitioner] was not aware of the charges against him, he has failed to show that counsel's performance was deficient.' " *Ray v. State*, 80 So.3d 965 (Ala.Crim.App. 2011) (quoting *Biggs v. State,* 281 Ga. 627, 632, 642 S.E.2d 74, 79 (2007)).

The Alabama Court of Criminal Appeals determined that "where an accused is not arraigned, and he does not object to this lack of arraignment until after a jury has returned a verdict, then the indictment is waived." (*Doc. No. 11, Exh. B-1 at pg. 5.*) The appellate

court further determined that:

> An accused may be arraigned after the jury has been impaneled and, if he brings this omission to the trial court's attention in a timely manner, and the trial court does not arraign him, then he is entitled to a new trial. There has been no showing in this case, nor does the record indicate, that Ricks did not receive a fair trial or that he was not afforded any of the rights to which he was entitled through arraignment when he had his initial appearance or 72 hour hearing.
> . . .
> Here, although Ricks was not "arraigned" he was given all of the information concerning his charges and afforded all of his rights pursuant to arraignment prior to trial. Thus, he suffered no prejudice and cannot meet that second prong of his burden pursuant to Strickland.

(*Doc. No. 11, Exh. B-1 at pgs. 5-7.*)

Federal courts have recognized that a formal arraignment is not constitutionally required if it is shown that the defendant knew the nature of the charges against him and was able to adequately defend himself. *United States v. Cook*, 972 F.2d 218, 222 (8th Cir. 1992); *United States v. Rogers*, 469 F.2d 1317, 1318 (5th Cir. 1972); *United States v. Hart*, 457 F.2d 1087, 1089 (10th Cir. 1972). In this case, Petitioner has shown no injury due to his failure to receive a formal arraignment. He knew the nature of the charges against him and had an adequate opportunity to defend himself. He has not alleged and does not now allege that he was ignorant of the offenses with which he was charged or that he was hindered in the preparation of a defense. Petitioner does not allege that his counsel failed to warn him of his rights or that he was deprived of an opportunity to plead not guilty. Obviously, a plea of not guilty was entered on Petitioner's behalf as he proceeded to trial. Professional counsel represented Petitioner during the entire pre-trial proceedings and trial. Further, Petitioner's

assignment of error that trial counsel's performance was deficient because he failed to object to a lack of a formal arraignment was only raised for the first time in his initial Rule 32 petition.

Petitioner has not demonstrate that he was deprived of any constitutional right at the arraignment stage of the proceeding. Under the circumstances, any failure of the trial court to formally arraign Petitioner did not prejudice his defense or deny him a fair trial. Because Petitioner's substantive allegation in this regard is baseless, he cannot demonstrate that his counsel's failure to object to a lack of formal arraignment was objectively unreasonable or that he was prejudiced by his counsel's failure to do so. *See Strickland*, 466 U.S. at 688. Based on the foregoing, the state court's rejection of Petitioner' ineffective assistance of counsel claim was objectively reasonable. *See Williams v. Taylor, supra.* This decision was likewise a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Consequently, Petitioner is not entitled to habeas relief on this claim of ineffective assistance of trial counsel.

### b. Failure to Request a Jury Instruction on Self-Defense

Petitioner assigns as attorney error his trial counsel's failure to request a jury instruction on self-defense. Petitioner argued on appeal of his convictions that the trial court erred by failing to instruct the jury on two of his requested jury charges concerning self-defense. The Alabama Court of Criminal Appeals denied Petitioner relief on this claim

finding that:

> The evidence is undisputed that Holt's friend, Whiting, fired a gun from inside Holt's car. Whiting and Holt both testified that Whiting returned fire after Ricks continued to shoot at them as they were attempting to leave the parking lot. In his brief on appeal, Ricks contends that, on cross-examination of Montgomery Police Detective Myrick, his counsel elicited testimony that a gun was shot from inside Holt's car. He also elicited testimony from Myrick that Whiting had initially told Detective Myrick the gun he had fired was "someplace else" R. 116) rather than at Holt's home, where Myrick found the gun. Ricks, without explanation, contends that this evidence goes "to show that the Defendant returned fire" and that he was not the aggressor. (Appellant's brief at p.26.)
>
> There is no evidence in the record, from either Ricks or the State, to support a theory that Ricks did not provoke the confrontation between him and Holt and Whiting or that Ricks was not the aggressor. The evidence shows that Ricks pulled his car in front of Holt's car while it was parked at the service station; Ricks approached Holt and told him the wheel rims on Holt's car were his; when Holt attempted to show Ricks the receipt for the rims, Ricks looked like he was going to get into the car with Holt but instead, he pulled a gun and began shooting, hitting Holt in the stomach. The evidence also shows that Ricks refused to retreat. Instead, the evidence indicates that Whiting began firing back at Ricks when Ricks pursued them from the parking lot and continued to shoot at them.
>
> In denying Ricks's request to instruct the jury on self-defense, the trial court found there was "absolutely no evidence that the defendant acted in self-defense." R. 156.) We agree. Because there is no evidence to support a theory of self-defense, and because the evidence shows that Ricks was the aggressor and provoked the incident, Ricks was not entitled to have the jury instructed on self-defense.  Accordingly, the trial court did not err in refusing to give Rick's requested jury charges regarding self-defense.

(*Doc. No. 11, Exh. A at pgs. 8-9.*)

In the instant proceeding, Petitioner argues that trial counsel's performance was constitutionally ineffective where he  failed to request a jury instruction on self-defense. The

record before the court, however,  reflects that trial counsel did, in fact, request such an instruction.  As noted above, the trial court determined the instruction was not warranted by the evidence:

> THE COURT: All right. There's absolutely no evidence that the defendant acted in self-defense.
>
> MR. JOHNSON: Judge, we feel like even if we raised it through cross-examination, it's sufficient for a jury charge on self-defense.
>
> THE COURT: Well, in my opinion, it wasn't raised in cross-examination. So there's no evidence to support such defense.

(*Doc. No. 18, Exh. A, Trial Transcript at pg. 156.*)

In addition to trial counsel orally requesting that the trial judge give a jury instruction on self-defense, the record  shows that he also  submitted a written request for a  jury instruction on self-defense charges which the trial court refused. (*Doc.  No. 18, Exh. A-2 at pg. 156 of 171 and Exh. A-2 at pgs. 41-42 of 87.*)  Accordingly, Petitioner's challenge to trial counsel's performance in this regard is baseless.

### c.  Failure to Allow Petitioner to Testify

Petitioner argues that had counsel allowed him to testify, his testimony, in conjunction with calling defense witnesses who "would have had all the evidence he needed to resolve[] who was the real owner of those [wheel] rims,"  would have  entitled him to a jury instruction on self-defense, and thus, more than likely, the outcome of the trial would have been different. (*Doc. No. 15 at pg. 6, see also Doc. No.  20 at pg 3.*)

The law is settled that a criminal defendant has a fundamental constitutional right to testify in his own behalf at trial. *Rock v. Arkansas,* 483 U.S. 44, 49-52 (1987); *United States v. Teague,* 953 F.2d at 1532. Thus, every criminal defendant is privileged to testify in his own defense or refuse to do so. *Faretta v. California,* 422 U.S. 806, 834 n. 45 (1975) (quotation omitted). Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide. *Teague* at 1533. Because the burden of ensuring that a criminal defendant is informed of the nature and existence of the right to testify rests upon trial counsel, it is, therefore, a component of effective assistance of counsel. *Id.*; *Sexton v. French,* 163 F.3d 874, 882 (4th Cir. 1998).  To prevail on an ineffective assistance of counsel claim, a petitioner must establish that 1) his or her counsel's representation fell below an objective standard of reasonableness, and 2) but for the deficiency in representation, a reasonable possibility exists that the result of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668 (1984).  A court may decline to reach the performance element of an ineffective assistance of counsel claim if convinced that the prejudice prong cannot be satisfied. *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir.1995).  Assuming arguendo that Defense counsel interfered with Defendant's right to testify and provided ineffective counsel in so doing, the court is convinced that Defendant was not prejudiced.

As earlier noted, the state trial court refused to give the jury instruction on self-

defense because the evidence presented at trial did not warrant the instruction.  At the time of the trial in this case, the Alabama law of self-defense was codified at Ala. Code § 13A-3-23[4] which provided in relevant part as follows:

> (a) A person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for the purpose.   A person may use deadly physical force if the actor reasonably believes that such other person is:
>
> (1)    Using or about to use unlawful deadly physical force;
> . . . .
>
> (3)    Committing or about to commit a kidnapping in any degree, assault in the first or second degree, burglary in any degree, robbery in any degree, forcible rape or forcible sodomy.
>
> (b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety:
>
> (1)    By retreating . . . .
>
> . . . .
>
> (c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force if:
>
> (1)    With intent to cause physical injury or death to another person he provoked the use of unlawful physical force by such other person; or
>
> (2)    He was the initial aggressor, except that his use of physical force upon another person under the circumstances is justifiable if he withdraws

---

[4]The statute was substantially amended effective June 1, 2006, but the amendments are not retroactive.  *White v. State*, 992 So.2d 783 (Ala. Crim. App. 2007).

> from the encounter and effectively communicates to the other person
> his intent to do so, but the latter nevertheless continues or threatens the
> use of unlawful physical force.

As earlier noted, the Alabama Court of Criminal Appeals found Ricks to be the aggressor who provoked the incident. Thus, under Alabama law, a self-defense instruction was not available to him. Moreover, the outcome would not have been different had he testified as he has indicated in the documents filed in this court. First, Ricks states that he would have said

> The petitioner would have testified that when he was talking with the alleged
> victim Brent Holt about the rims the passenger in Holt's car Elbert Whiting JR.
> was the one who started shooting and the petitioner only started returning fire
> at them when he retrieved his gun out of his car and Holt and his passenger
> keep shooting at his.

(Doc. # 15 at 7)

Ricks further states that he would have testified that "Holt. (or his companion Elbert Whiting) who first brandished firearms threatening and shooting at the petitioner, and that the petitioner had to retreat to his car to retrieve his handgun, and that he shot at Holt (and his companion) in self-defense." (Doc. # 15-1 at 3) Ricks' own testimony thus confirms that he had the ability to and did retreat but thereafter continued to use force rather than communicate an intent to withdraw. Ricks' testimony does not show that he was not the person who initially provoked the conflict. In short, even had Ricks testified, the outcome of the trial would not have been different. He is entitled to no relief on this claim.

*d. Failure to Call Witnesses*

-23-

Petitioner argues that trial counsel performed deficiently when he failed to interview or subpoena witnesses who could have presented testimony to essentially discredit the first degree robbery charge where such charge was premised on Petitioner attempting to steal the wheel rims on the victim's car when, Petitioner claims, it was the victim who had either stolen his property or obtained the wheel rims as stolen property. (*Doc. No. 15 at pgs. 5-6, Doc. No. 20 at pg. 2*.)   The Alabama Court of Criminal Appeals rejected Petitioner's challenge to trial counsel's performance in this regard concluding that:

> [C]ounsel's failure to interview or subpoena certain witnesses was not ineffective[] as their testimony would not have changed the outcome of the trial. The trial record reveals[] that the State produced evidence that the victim purchased his tire rims and that the cashier-witnesses gave statements indicating that they did not the see the victim initiate the altercation. Thus, at most, the witnesses named by Ricks would show that his car was stolen and provide impeachment testimony concerning the ownership of the rims.

(*Doc. No. 11, Exh. B-1 at pg. 7.*)

Trial counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference. *See Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*) (citing *Waters v. Thomas,* 46 F.3d 1506, 1512, 1518-19 (11th Cir. 1995) (*en banc*)). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [the court] will seldom, if ever, second guess." *Waters,* 46 F.3d at 1512; *Chandler,* 218 F.3d at 1314 n. 14 (describing the decision to call some witnesses and not others as "the epitome of a strategic decision" (quotation marks omitted)); *United States v. Long,* 674 F.2d 848, 855 (11th Cir. 1982) (appellate court "will not second-guess tactical

decisions of counsel in deciding whether to call certain witnesses").  Similarly, the decision to interview potential witnesses, like the decision to present their testimony, must be evaluated in light of the trial strategy reasonably competent counsel utilized in the context of the particular case. *See Wilkins v. Iowa,* 957 F.2d 537, 540 (8th Cir. 1992) ("[a] less than exhaustive investigation is adequate for constitutional purposes . . . if reasonable professional judgments justified limiting its scope").

Assuming, *arguendo*, that trial counsel was ineffective for failing to call the witnesses identified by Petitioner, he provides no basis for believing that but for trial counsel's failure to call witnesses who would have testified that Petitioner previously bought custom rims and/or knew that the rims on the victim's car were  stolen, there was  "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S.  at 694.  That is, Petitioner has simply not shown that counsel's conduct about which he complains prejudiced him such that the jury would have reached a different decision and acquitted him of the charge in light of the other evidence presented at trial. *See Id*. This is because the purported testimony of the witnesses Petitioner alleges trial counsel should have called would not be particularly relevant to the issue of whether Petitioner was involved in the unlawful actions shown by the evidence in his case. Regardless of how the victim came to be in possession of the rims on his vehicle, Petitioner was not entitled to take the law into his own hands or engage in criminal conduct with impunity because he believed the rims on the victim's car were his.   Because Petitioner has not shown that a reasonable probability

-25-

exists that the outcome of the case would have been different if trial counsel had taken the action that Petitioner alleges he should have taken, trial counsel's decision not to call the witnesses in question was within the range of prevailing professional standards.

After reviewing the record, this court finds that Petitioner has not provided clear and convincing evidence to dispute the decision of the Alabama appellate court with regard to his claim concerning trial counsel's performance in failing to call certain witnesses to testify. Thus, the Alabama Court of Criminal Appeals' determination that Petitioner failed to demonstrate counsel's ineffectiveness was neither contrary to, nor an unreasonable application of, federal law nor "based on an unreasonable determination of the facts...." 28 U.S.C. § 2254(d)(2). This claim, therefore, does not warrant habeas relief.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Petitioner Demonsia Ricks be DENIED and DISMISSED with prejudice.

It is further

ORDERED that on or before **January 21, 2014,** the parties ay file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 6th day of January, 2014.


　　　　　/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE